**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**KIMBERLEE ANN DARLING,**

**Plaintiff,**

**v.** **Case No. 25-C-1532**

**FRANK J. BISIGNANO,**
**Commissioner of Social Security,**

**Defendant.**

---

**DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION**

---

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Kimberlee Ann Darling's application for supplemental security income under Title XVI of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the following reasons, the decision of the Commissioner will be affirmed.

**BACKGROUND**

Plaintiff filed an application for supplemental security income on March 31, 2022, alleging disability beginning July 5, 2019. R. 227–33. She listed chronic obstructive pulmonary disease (COPD), rheumatoid arthritis, high cholesterol, peripheral neuropathy, hand/wrist/arm problem, elbow problem, neck problem, back problem, hip problem, and knee problem as the conditions limiting her ability to work. R. 283. After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ. On June 20, 2024, Plaintiff amended her alleged onset date to February 22, 2022. R. 223. ALJ William Shenkenberg held an

administrative hearing on June 27, 2024. R. 33–61. Plaintiff, who was represented by counsel, and a vocational expert (VE) testified.

At the time of the hearing, Plaintiff lived in a condo with her mother, who worked two jobs. R. 43. She indicated that she was 5'8" and weighed 187 pounds, though the ALJ assumed she meant to say that she weighed 287 pounds. R. 44, 23. Plaintiff testified that she obtained a bachelor's degree from American Intercontinental University and planned to obtain another bachelor's degree in agriculture and marine biology through Unity Environmental University of Maine's online program. R. 43–44. She indicated that she was a full-time student and that she would complete the program in January 2025. R. 44. Plaintiff reported that she received an accommodation permitting her to use a text-to-speech device for video-recorded assignments because she experienced shortness of breath after speaking for more than five or ten seconds as a result of her COPD. R. 44–45. She spends 25 hours a week on her school work. R. 54. Plaintiff reported that she is an A student. R. 55.

Plaintiff testified that she experiences rheumatoid arthritis flareups as a result of the weather or something she eats. R. 45. She stated that her flareups last about three weeks and that, when she experiences a flareup, she cannot walk without assistance down the stairs or into the kitchen. R. 45–46. Plaintiff receives assistance from her mother and her father. Plaintiff reported experiencing many flareups over the last three years. R. 46. She indicated that she uses a cane and owns a walker but that she has a hard time using it when going down hills. R. 47.

Plaintiff testified that she is right-hand dominant and that she has limited bending in her right wrist. R. 44, 46. She stated that she broke her right wrist in 2019 or 2020 after a fall. R. 50. She indicated that she experiences problems every day with her right hand, she has difficulty writing and typing, and she has difficulty grasping things, like a dog's leash. R. 46–47. Even

though Plaintiff did not own a dog at the time of the hearing, she explained that she has a little dog "once in a while." R. 47. In 2008, Plaintiff fractured her left arm, and she has eight screws and a plate in it. R. 50–51. Plaintiff testified that her left arm also gives her difficulty every day. R. 51. She explained that it does not extend normally, she has a lot of pain in her upper left arm, and she cannot put a lot of pressure on it. *Id.* Plaintiff stated that she had difficulty putting her hair into a ponytail and could not move her left arm. R. 47–48. She indicated that her shoulders are very sore. R. 48. When she cannot move well, she experiences panic attacks because she does not want to be a burden. *Id.* Plaintiff testified that she experiences stiffness in her shoulders, hips, and hands every morning and that the stiffness lasts for three to four hours. R. 52. She stated that she does not do a lot of housework the way she used to but that she tries to empty the dishwasher and fold some towels. *Id.* Plaintiff indicated that she has allergies and has difficulty breathing in winter and early spring. R. 55.

Plaintiff began taking Humira for her rheumatoid arthritis in 2021. R. 52. She indicated that the week before the hearing, her doctor prescribed her a different medication, but she had not started the new medication. *Id.* Plaintiff stated that she was not seeing any providers for mental health issues. R. 53. She indicated that she gets anxiety because, even though she is ambitious, her conditions have limited the way she wanted to live. *Id.* Plaintiff reported that she was not taking any medications for anxiety or any other mental health issue, though she had taken medication for a panic disorder in 2010 or 2011. R. 54.

Plaintiff last worked in 2018 as a babysitter. R. 48. Before that, she worked at Macy's. *Id.* Plaintiff testified that, in 2018, she experienced a panic attack when she was driving to work because she was thinking she would not be able to walk down the stairs. R. 48–49. She was able to drive home after experiencing the panic attack. R. 49. Plaintiff reported that she drives once

every two weeks. *Id.* She explained that she needs assistance getting into and out of the car and has difficulty holding the steering wheel. R. 49–50.

In a fourteen-page decision dated October 23, 2024, the ALJ concluded Plaintiff was not disabled. R. 15–28. Following the Agency's sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 22, 2022, the application date. R. 17. Next, the ALJ determined that Plaintiff had the following severe impairments: rheumatoid arthritis, COPD, asthma, allergic rhinitis, and obesity. *Id.* The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19.

After reviewing the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) except "occasionally climbing of ropes, ladders, and scaffolds, and ramps and stairs; and occasionally balancing, stooping, kneeling, crouching and/or crawling. She can frequently handle and finger bilaterally, and must avoid concentrated exposure to pulmonary irritants (such as fumes, odors, dusts and gases) and hazards (such as moving machinery and unprotected heights)." R. 19–20. The ALJ found Plaintiff had no past relevant work and that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including storage rental clerk, mail clerk, and office helper. R. 27. Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since February 22, 2022, the date the application was filed. R. 28. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023) (internal quotation marks and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citation omitted); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's (SSA) rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

### A. Assessment of Medical Opinions

The ALJ discussed opinions offered by five different medical sources: Mina Khorshidi, M.D., and Usama Khayyal, M.D., the two Disability Determination Services (DDS) medical consultants who reviewed the record; Mark Pushkash, Ph.D., who performed a psychological consultative examination of Plaintiff; Mirian Organ, M.D., who performed an internal medicine consultative examination of Plaintiff; and James Prahl, M.D., a pulmonologist who completed a Mental Capacity Assessment and a Physical Assessment of Plaintiff. Both initially and on reconsideration, the two DDS medical consultants opined that Plaintiff had the residual functional capacity to perform a substantial range of light work, notwithstanding her reports of disabling limitations and pain. Dr. Khorshidi, for example, reported:

> Claimant is diagnosed with RA that [a]ffects her elbows, neck, back, hips, knees, and hands. She reports pain that limits her ability to perform ADLs. Claimant also has asthma and COPD. PFTs are not listing level. Exam indicates claimant has a slow, but normal gait. She notes use of assistive devices on her function report, but does not use one during exams. ROM in the back and joints was normal. Strength was also normal. As a result of her impairments, claimant is limited to lifting no more than 20 pounds oc[c]asionally and 10 pounds frequently. She can sit, stand, and walk for up to 6 hours in an 8 hour work day. She should avoid concentrated exposure to dusts, fumes, and gases d/t asthma.

R. 111. Dr. Khayyal offered the same opinion on reconsideration. R. 122. Drs. Pushkash, Organ, and Prahl thought Plaintiff's limitations were so severe as to render her disabled.

The ALJ found the opinions of both DDS medical consultants "persuasive." R. 24. He noted that "[t]he opinions are internally consistent with contemporaneous treatment or examination notes, as well as generally supported by the evidence as a whole." *Id.* The ALJ did not simply adopt the opinions of the DDS consultants in full, however. Giving her "every reasonable benefit of [the] doubt," the ALJ found Plaintiff to have greater functional limitations than those found by

the state agency medical consultants. *Id.* The ALJ explained that, due to the combination of symptoms and effects of Plaintiff's rheumatoid arthritis and obesity, Plaintiff is limited to occasional climbing of ropes, ladders, and scaffolds, and ramps and stairs, and balancing, stooping, kneeling, crouching and/or crawling, and frequent handing and fingering bilaterally. *Id.*

Plaintiff disagrees with the ALJ's assessment of the opinion evidence. She asserts that the ALJ erred in evaluating the medical opinions of internal medicine consultative examiner Mirian Organ, M.D., and psychological consultative examiner Mark Pushkash, Ph.D.

Under the current regulations, an ALJ is not required to give specific evidentiary weight to any medical opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must focus on the persuasiveness of the medical opinion by considering supportability, consistency, the relationship with the claimant, specialization, and other factors. § 404.1520c(c). The regulation explains that supportability and consistency are the "most important factors" to consider. § 404.1520c(b)(2).

**1. Dr. Organ**

Dr. Organ completed a social security disability consultative examination on December 3, 2022. R. 994–99. During the examination, Plaintiff complained of right shoulder, left arm, right knee, and middle of left back pain that is "shooting" and "constant." R. 994–95. Dr. Organ noted that Plaintiff was not able to get up and down from the exam table without difficulty; that tandem walking was performed with difficulty; that Plaintiff walked with a slow careful gait, with a limp, and without an assistive device; that Plaintiff was not able to walk on heels or toes or squat and rise from that position with ease; and that Plaintiff performed finger to nose testing with difficulty. R. 996. Plaintiff was positive for cervical, thoracic, and lumbar tenderness; she had no edema, cyanosis, or clubbing; she had bilateral shoulder tenderness, right wrist nodule and tenderness, bilateral hip tenderness, and right knee tenderness. R. 995–96. Dr. Organ observed that Plaintiff

had normal 5/5 neuromuscular strength; that Plaintiff's right and left upper extremity, right and left lower extremity, and right and left grip strengths were normal; that repetitive activity does not cause significant, reproducible muscle weakness; that Plaintiff is able to grasp, shake hands, write, and pick up a coin with both hands; and that Plaintiff had normal range of motion. R. 996–98.

Dr. Organ concluded that Plaintiff was limited to occasional sitting due to cervical, thoracic, and lumbar tenderness; occasional standing due to bilateral hip tenderness and right knee tenderness; and occasional walking due to cervical, thoracic, lumbar, bilateral hip, and right knee tenderness. R. 999. She opined that Plaintiff can lift and carry five pounds occasionally on both left and right sides because of cervical, thoracic, lumbar, bilateral shoulder, right wrist, and bilateral hip tenderness. *Id.* The ALJ concluded that Dr. Organ's opinions were not persuasive. R. 25.

Plaintiff asserts that the ALJ ignored Dr. Organ's explicit explanation that the carrying and lifting limitation was due to Plaintiff's cervical, thoracic, and lumbar spine tenderness as well as her bilateral shoulder tenderness, right wrist tenderness, and bilateral hip tenderness. But the ALJ did acknowledge that Dr. Organ opined that Plaintiff was "limited to occasionally standing and/or walking and lifting and carrying '5 lbs. occasionally on both left and right sides' tenderness of her spine, shoulders, hips, and right wrist." R. 25. He nevertheless concluded that Dr. Organ's opinions were not internally consistent with contemporaneous treatment or examination notes and were not generally supported by the evidence as a whole.

The ALJ explained that Dr. Organ's opinion that Plaintiff could not lift more than five pounds due to pain symptoms is not consistent with the longitudinal record, as well as Dr. Organ's own examination of Plaintiff, which showed Plaintiff had normal range of motion and normal strength during physical examination. The ALJ found that this evidence in the record did not

support a conclusion that Plaintiff's pain symptoms prevented her from lifting more than five pounds. *Id.*

Plaintiff also asserts that the ALJ failed to determine the persuasiveness of Dr. Organ's opinion that indicated Plaintiff was only able to occasionally sit, stand, and walk. Again, the ALJ explained that Dr. Organ opined that Plaintiff was "limited to occasionally standing and/or walking" as a result of her tenderness. *Id.* He noted that, upon physical examination, Plaintiff was positive for tenderness throughout her body, including cervical, thoracic, and lumbar spine; bilateral shoulders; right wrist nodule; bilateral hips; and right knee. R. 21. The ALJ observed that, during the examination, Plaintiff was unable to get off and on the examination table without difficulty; performed tandem walking with difficulty; could not walk on heels or walk on toes; could not squat and arise with ease; performed finger to nose testing with difficulty; and walked with a slow and careful gait with a limp without use of an assistive device. *Id.* He noted that Plaintiff showed no edema, cyanosis, or clubbing; showed a normal range of motion throughout her body; and showed normal strength throughout her body, including bilateral grip strength while demonstrating the ability to grasp, shake hands, write, and pick up a coin with both hands. R. 21–22.

The ALJ concluded that Dr. Organ's opinions were inconsistent with the medical record as a whole. The ALJ noted that while Dr. Organ's examination of Plaintiff recorded her with an antalgic gait, unable to walk on toes, unable to walk on heels, and doing tandem walking and getting on and off the examination table with difficulty, the longitudinal medical record frequently showed Plaintiff with a normal gait (as well as normal strength of the lower extremities). R. 25.

Plaintiff asserts that the ALJ substituted his lay opinion for that of a medical doctor by pointing to Plaintiff's normal range of motion and strength in rejecting Dr. Organ's opinions. But

the ALJ did not "play doctor" by assessing the evidence in the record. "Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ's analysis in this case was the "type of context consideration that judges regularly make when assessing the weight to attribute to conflicting evidence." *Id.* It essentially mirrors the analysis of the two DDS medical consultants. The ALJ sufficiently explained the reasons he found Dr. Organ's opinions unpersuasive. Substantial evidence supports the ALJ's conclusions. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).

**2. Dr. Pushkash**

Dr. Pushkash performed a psychological consultative examination on November 29, 2022. R. 988–91. He noted that Plaintiff is a 50-year-old woman who describes significant functional impairment as a result of chronic pain associated with rheumatoid arthritis and that she also has a history of anxiety with panic attacks. R. 990. Dr. Pushkash opined:

> This woman has the intellectual capabilities to comprehend, recall, and follow through on instructions. However, her ability to concentrate and persist on tasks in a work environment would be markedly impaired due to the interfering effects of a high level of anxiety. She also admits to some difficulties appropriately relating to others, because of a low tolerance for frustration and easy irritability. Therefore, there would be moderate impairment in appropriately relating to supervisors and co-workers on a job. She is finding it difficult to cope with day-to-day experience because of chronic pain. Finally, should the claimant be entitled to funding, it would appear that she could handle the money in her own best interests.

*Id.*

The ALJ concluded that Dr. Pushkash's opinions were not persuasive. R. 25. "Regarding the claimant's mental functional limitations," the ALJ referenced the findings of DDS Psychologist Jason Kocina "that the claimant's anxiety was not a severe impairment and did not contribute to more [than] mild mental functional limitations." R. 25, 106–07. The ALJ concluded that Dr.

Kocina's findings were "consistent with the longitudinal medical evidence of record which frequently showed the claimant with normal mood and affect." R. 25.

Plaintiff argues that the ALJ ignored Dr. Pushkash's explanation that Plaintiff's marked limitations in her ability to concentrate and persist on tasks in a work environment were due to her anxiety. Yet, the ALJ did acknowledge that Dr. Pushkash opined that Plaintiff's "ability to concentrate and persist on tasks in a work environment would be markedly impaired due to the interfering effects of a high level of anxiety" and a "moderate impairment in appropriately relating to supervisors and coworkers on the job." *Id.* He concluded that Dr. Pushkash's opinions were not internally consistent with contemporaneous treatment or examination notes, which frequently showed Plaintiff with normal mood and affect. The ALJ explained that Dr. Pushkash's opinions were also inconsistent with his own examination of Plaintiff, who he observed with "good" eye contact, with "normal social responsiveness," came "across as pleasant, friendly, and cooperative," and could perform serial seven and a double-digit calculation correctly. *Id.* He found that Dr. Pushkash's opinions were not supported by the evidence as a whole, such as Plaintiff not alleging any problems getting along with others, including authority figures, in her function report. *Id.*

Plaintiff argues that the ALJ "played doctor" by considering her eye contact, social responsiveness, and demeanor because Dr. Pushkash did not cite to those findings in reaching his opinions. But the social security regulations require that the ALJ assess whether the medical opinions are supported by and consistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1520c(c)(1)–(2); 416.920c(c)(1)–(2). It was not improper for the ALJ to consider this evidence in determining whether Dr. Pushkash's extreme limitations were consistent with the record. *See Young*, 362 F.3d at 1001. This is especially true in light of Dr. Kocina's findings that Plaintiff had only mild limitations in the four areas of mental functioning. R. 106.

The ALJ also noted that Dr. Pushkash appeared to have based his opinion, in significant part, upon Plaintiff's own subjective allegations as indicated by his statements that "she admits to some difficulties" and "she is finding it difficult to cope," which would be based upon Dr. Pushkash's conversation with her, not his examination findings. R. 25. Although Plaintiff asserts that the fact that Dr. Pushkash relied on Plaintiff's subjective allegations should not negate the marked limitations Dr. Pushkash found, "when a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion." *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) (citation omitted).

The ALJ provided an "accurate and logical bridge" between the evidence and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (internal quotation marks and citation omitted). In sum, the ALJ did not err in evaluating the medical opinion evidence.

**B. Subjective Symptoms**

Plaintiff challenges the ALJ's evaluation of her subjective allegations. The social security regulations set forth a two-step procedure for evaluating a claimant's statements about the symptoms allegedly caused by her impairments. *See* 20 C.F.R. § 404.1529. First, the ALJ determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." § 404. 1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of a claimant's symptoms and determines how they limit the claimant's "capacity for work." § 404.1529(c)(1). In doing so, the ALJ considers all the available evidence as well as the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) the precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) other treatment; and (6) any other factors concerning functional

limitations and restrictions due to pain or other symptoms. *See* § 404.1529(c)(3); *see also* SSR 16-3p. "ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (citation omitted). On judicial review, the court must "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). The court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. R. 20. He explained that, based on the totality of the evidence of record, Plaintiff has a combination of severe impairments that can be expected to cause significant limitations, but she has not met her burden of proving that she is incapable of performing a reduced, but broad, range of work at any exertional level. R. 26.

Plaintiff asserts that the ALJ failed to properly evaluate her allegations of pain and dysfunction stemming from her rheumatoid arthritis. She argues that the ALJ erred by rejecting her allegations solely because they were not supported by the medical evidence. But the ALJ did not solely rely on the objective medical evidence in reaching his conclusions. Nor did he reject Plaintiff's allegations of pain and dysfunction. The ALJ thoroughly summarized and assessed

Plaintiff's testimony, the statements contained in Plaintiff's function report, Plaintiff's activities of daily living, Plaintiff's treatment history, and the opinion evidence in concluding that Plaintiff was not as limited as she alleged. R. 20–27.

This is not to say the ALJ did not consider the objective medical evidence in assessing Plaintiff's subjective complaints. The ALJ made specific note that Plaintiff "showed a normal range of motion throughout her body; and showed normal strength throughout her body, including bilateral grip strength while demonstrating the ability to grasp, shake hands, write, and pick up a coin with both hands." R. 21–22 (citing R. 995–99). These findings led the ALJ to reject Plaintiff's claim that her symptoms of pain and weakness were so severe as to prevent her from performing the functional demands of light work.

The ALJ's reasoning was not improper. In fact, it mirrors one of the examples provided in the Social Security Ruling that explains how the agency evaluates symptoms in disability cases. SSR 16-3p offers the following example of when medical findings are inconsistent with a claimant's statements about pain or other symptoms:

> an individual with reduced muscle strength testing who indicates that for the last year pain has limited his or her standing and walking to no more than a few minutes a day would be expected to have some signs of muscle wasting as a result. If no muscle wasting were present, we might not, depending on the other evidence in the record, find the individual's reduced muscle strength on clinical testing to be consistent with the individual's alleged impairment-related symptoms.

2017 WL 5180304, at *5. The ALJ drew similar conclusions about the functional impact of Plaintiff's COPD from the test results and physical findings revealed in the medical record. R. 23.

Even though the ALJ determined that the record did not support the conclusion that Plaintiff's symptoms would reduce her occupational base so significantly that she could not perform any substantial gainful activity, he acknowledged that Plaintiff's rheumatoid arthritis "continued to cause pain symptoms despite treatment throughout the period under consideration."

R. 21–22. The ALJ found persuasive the opinions of the state agency medical consultants that Plaintiff was limited to light exertional work with additional limitations to avoid concentrated exposure to pulmonary irritants. R. 24. He nevertheless, as noted above, gave Plaintiff "every reasonable benefit of [the] doubt" and found Plaintiff to have greater functional limitations than those found by the state agency medical consultants. *Id.*

The ALJ fully considered the evidence in the record in assessing Plaintiff's subjective symptoms. The fact that Plaintiff, or even a reviewing court, may weigh the evidence differently is not a reason for reversal. The ALJ's conclusion is supported by substantial evidence, is not patently wrong, and does not necessitate remand.

## CONCLUSION

For these reasons, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 13th day of November, 2026.

William C. Griesbach
United States District Judge